UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANN DECKER, | ) | CIVIL ACTION NO. 4:20-CV-951 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| Defendant | ) | |

MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff Ann Decker, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is not supported by substantial evidence. Accordingly, the Commissioner's final decision will be VACATED and this case will be remanded for a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

II.     BACKGROUND & PROCEDURAL HISTORY

On October 17, 2017, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 15; Doc. 19-2, p. 16).  In this application, Plaintiff alleged she became disabled on April 10, 2017, when she was forty-six years old, due to the following conditions: heart attack; kidney disease; bulging disc in my neck; migraines; kidney stones; fibromyalgia can't walk far distance; bulging disc in my back; rotator cuff right shoulder. (Admin. Tr. 154; Doc. 19-6, p. 6). Plaintiff alleges that the combination of these conditions affects her ability to lift, squat, bend, stand, reach, walk sit, kneel, climb stairs, complete tasks, and use her hands. (Admin. Tr. 179; Doc. 19-6, p. 31). Plaintiff has at least a high school education. (Admin. Tr. 23; Doc. 19-2, p. 24). Before the onset of her impairments, Plaintiff worked as an administrative assistant and customer service representative. *Id*.

On January 3, 2018, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 15; Doc. 19-2, p. 16). On March 1, 2018, Plaintiff requested an administrative hearing. *Id*.

On January 23, 2019, Plaintiff, assisted by her counsel, appeared and testified during a hearing before Administrative Law Judge David Romeo (the "ALJ"). *Id*. On March 22, 2019, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 24; Doc. 19-2, p. 25). On May 8, 2019,

Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 130; Doc. 19-4, p. 63).

On May 11, 2020, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 19-2, p. 2).

On June 12, 2020, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. *Id*. As relief, Plaintiff requests that the Court enter an order awarding benefits, or in the alternative remand this matter for a new administrative hearing. *Id*.

On December 1, 2020, the Commissioner filed an Answer. (Doc. 18). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. *Id*. Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 19).

Plaintiff's Brief (Doc. 20), the Commissioner's Brief (Doc. 23), and Plaintiff's Reply (Doc. 24) have been filed.  This matter is now ripe for decision.

## III.    STANDARDS OF REVIEW

### A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.    STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A);

*see also* 20 C.F.R. § 404.1505(a).[1] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4).

---

[1] Throughout this Report, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on March 22, 2019.

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard,

Page 7 of 24

the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

IV.   DISCUSSION

Plaintiff raises the following issues in her Statement of Errors:

(1)   The hypothetical question posed to the vocational expert failed to properly account for the plaintiff's migraine headaches and thus the decision is not supported by substantial evidence and reversal is proper.

(2)   The decision of the Commissioner should be reversed as the ALJ erred in weighing the evidence concerning the Plaintiff's migraine headaches and the resultant RFC determination, and the denial of disability, are not supported by substantial evidence.

These arguments, in large part, are centered on the evaluation of limitations related to Plaintiff's migraine headaches. There is no dispute that Plaintiff's migraines are a medically determinable severe impairment.

Plaintiff argues that her migraines would adversely impact her ability to stay "on task" during the workday and that the migraines would result in three unplanned work absences per month. There is no dispute that the ALJ did not

Page 8 of 24

include these limitations in the RFC assessment. There is also no dispute that, if even one of these limitations were credited Plaintiff would be found "disabled." (Admin. Tr. 54; Doc. 19-2, p. 55) (testimony that a person off task more than fifteen percent of the workday, or a person who is absent more than twice a month, would be considered unemployable).

In support of her arguments, Plaintiff points out that the ALJ mischaracterized the objective evidence regarding the treatment Plaintiff received for her migraines, and improperly discounted multiple medical opinions by sources that agree with her position that she would be "off task" more than 15% of the time and absent more than three days per month due to migraine headaches.

A.    THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his March 2019 decision, the ALJ found that Plaintiff would meet the insured status requirement of Title II of the Social Security Act through September 30, 2022. (Admin. Tr. 17; Doc. 19-2, p. 18). Then, Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between April 10, 2017 (Plaintiff's alleged onset date) and March 22, 2019 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 18; Doc. 19-2, p. 19). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe

impairments: chronic kidney stones and kidney disease; migraine headaches; status post hydronephrosis and septic shock from urinary obstruction from renal calculus; cervical degenerative joint and disc disease with right radiculopathy status post laminectomy and laser spine surgery; right knee multifocal cartilage abnormalities; right shoulder tendinopathy status post arthroscopic surgery; non-ST elevated myocardial infarction; mitral valve prolapse; and lumbar degenerative disc disease with radicular symptoms. *Id*. The ALJ then stated that Plaintiff's "remaining physical impairments were non-severe, but did not identify what those impairments are. *Id.* At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*.

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in sedentary work as defined in 20 C.F.R. § 404.1567(a) except:

> she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; can never climb ropes, ladders or scaffolds; can frequently reach, handle finger and feel with both upper extremities; can never be exposed to high, exposed places or moving mechanical parts; can tolerate occasional exposure to weather, extreme heat, extreme cold, wetness, humidity, vibration, and atmospheric conditions; can occasionally operate foot controls; can tolerate a moderate noise intensity level as defined in the <u>Dictionary of Occupational Titles</u>; can tolerate occasional exposure to light brighter

than that typically found in an indoor work environment such as an office or retail store; and can perform simple, routine tasks at a consistent pace but not a production rate pace where each task must be completed within a strict deadline.

(Admin. Tr. 18; Doc. 19-2, p. 19).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in her past relevant work. (Admin. Tr. 23; Doc. 19-2, p. 24). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 23-24; Doc. 19-2, pp. 24-25). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: call out operator, DOT #237.367-014; surveillance system monitor, DOT #379.367-010; and telephone quotation clerk, DOT #237.367-046. *Id*.

B.  WHETHER THE ALJ MISCHARACTERIZED THE OBJECTIVE EVIDENCE ABOUT PLAINTIFF'S MIGRAINE HEADACHES

In support of her position that these limitations are credibly established, Plaintiff argues that the ALJ inaccurately concluded that she had stopped taking medication for her migraines in March 2018.

In his decision, the ALJ noted:

Neurologically, the claimant has a history of migraine headaches for which she has taken preventative medication (Exhibits 1F, 6F, 12F). Her neurological records indicate that preventative medication has

provided the claimant with significant migraine relief in the past but that, as of March 2018, she had stopped taking it (Exhibit 12F, page 3). These records are negative for any on-going signs of distress, fatigue, or neurological deficits during examination since her alleged onset date (Exhibit 1F, page 2; Exhibit 12F, pages 3, 7, 11). Her remaining clinical findings are also negative for any on-going distress, fatigue, or neurological deficits during examinations since her alleged onset date. CT scans of her head have been negative for any significant abnormalities (Exhibit 23F, page 10). The claimant has reported that she can drive herself places, shop in stores, manage money on a regular basis, read, watch television, crochet, use a cell phone, and regularly attend appointments despite her regularly occurring migraines (Exhibit 4E; Testimony).

(Admin. Tr. 20; Doc. 19-2, p. 21).

In her brief, Plaintiff points out that:

The ALJ was under the mistaken impression that the plaintiff stopped taking preventative medication for her migraines as of March 2018. (R. 20). However, as set forth at length herein, the plaintiff was continuing to take numerous different medications through the date of the hearing in this matter and was still reporting severe migraines to all of her medical providers.

(Doc. 20, p. 12).

The Commissioner does not specifically address this issue, and instead generally argues that the ALJ's evaluation of the limitations due to migraines is supported by the record.

The March 2018 treatment record at issue is from treating neurologist Dr. Sanjeev Garg. The record in this case includes a treatment note from March 20, 2017, suggesting that Plaintiff's migraines were treated with Topamax, Maxalt,

and Treximet. (Admin. Tr. 205; Doc. 19-7, p. 4). Then, during a March 2018 follow-up appointment Plaintiff reported her symptoms were unchanged. The medication list suggests Plaintiff's migraines were treated with Treximet, Maxalt, and Amitriptyline. (Admin. Tr. 1034; Doc. 19-14, p. 4). During the appointment, Plaintiff asked to go back on Topamax. (Admin. Tr. 1036; Doc. 19-14, p. 6).[2]

Although the ALJ is correct that Plaintiff may have stopped one medication—Topomax—at some point between March 2017 and March 2018, his summary of the evidence mischaracterizes the record. It suggests that Plaintiff was taking no migraine medications, when in fact she was taking two or three different medications. Furthermore, the ALJ does not discuss that Plaintiff (an individual with a medically determinable severe impairment of "chronic kidney stones and kidney disease") likely stopped taking Topomax for a period, but then decided to restart it despite the "risk of recurrence of kidney stones" because it had helped with her migraines "significantly in the past." *Id.* Therefore, I agree with Plaintiff that the ALJ may have misunderstood Plaintiff's medication regime, and that this misunderstanding may have resulted in the ALJ drawing unsupported inferences about the severity of Plaintiff's symptoms as a result of that misunderstanding.

---

[2] Plaintiff reported that in September 2017 she had "septic shock as a result of an obstructive kidney stone" that caused a heart attack. (Admin. Tr. 885; Doc. 19-12, p. 112).

This error, considered together with the ALJ's failure to adequately explain his decision to discount certain medical opinions, warrants remand.

C.  WHETHER THE ALJ PROPERLY EVALUATED THE MEDICAL OPINIONS ABOUT THE LIMITATIONS RELATED TO HER MIGRAINES

The record in this case includes the following medical opinions:

(1)  a December 19, 2017 PRT assessment by State agency psychologist Francis Murphey, Ph.D., (Admin. Tr. 62; Doc. 19-3, p. 7);

(2)  a December 8, 2017 medical source statement by consultative examiner Ziba Monafared, M.D., (Admin. Tr. 894-889; Doc. 19-12, pp. 121-126);

(3)  a December 29, 2017 physical RFC assessment by State agency medical consultant Chankun Chung, M.D., (Admin. Tr. 63-; Doc. 19-3, pp. 8-10);

(4)  a January 8, 2019 medical source statement endorsed by treating physician Christopher Andres and Certified Registered Nurse Practitioner Kathryn Henfling, (Admin. Tr. 1067-1069; Doc. 19-14, pp. 37-39); and

(5)  a January 22, 2019 medical source statement by treating neurologist Sanjeev Garg, (Admin. Tr. 1155-1157; Doc. 19-14, pp. 127-129).

The Commissioner's regulations define a medical opinion as "a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [he or she has] one or more impairment-related limitations or restrictions in the following abilities:"

(i)  [The] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or

       postural functions, such as reaching, handling, stooping, or crouching);

(ii)    [The] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii)   [The] ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv)   [The] ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2). A "medical source" is "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State of Federal Law, or an individual who is certified by a States as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law. 20 C.F.R. § 404.1502(d). If one medical source submits multiple medical opinions, and ALJ will articulate how he or she considered the medical opinions from that medical source in a single analysis. 20 C.F.R. § 404.1520c(b)(1).

     An ALJ's consideration of competing medical opinions is guided by the following factors: the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source (supportability); the extent to which the medical source's opinion is

consistent with the record as a whole (consistency); length of the treatment relationship between the claimant and the medical source; the frequency of examination; the purpose of the treatment relationship; the extent of the treatment relationship; the examining relationship; the specialization of the medical source and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c).

The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2). The ALJ will explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. The ALJ may, but is not required to, explain his or her consideration of the other factors unless there are two equally persuasive medical opinions about the same issue that are not exactly the same. 20 C.F.R. § 404.1520c(b)(3). This regulatory change in *what* factors the ALJ needs to explain his or her consideration of, however, does not relieve the ALJ of the separate obligation of providing enough explanation for the appellate court to perform its statutory function of judicial review. *See Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (explaining that the an administrative decision should be accompanied by a clear and satisfactory explanation of the basis on which it rests so that the appellate court can review the decision).

Unlike prior regulations, under the current regulatory scheme, when considering medical opinions, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a).

### 1. Doctor Murphy's Opinion is Not Relevant to the ALJ's Evaluation of Plaintiff's Migraine Headaches

There is no dispute that, at step two of his decision, the ALJ found that Plaintiff did not demonstrate that "she has a medically determinable mental impairment." (Admin. Tr. 18; Doc. 19-2, p. 19). This finding is supported by Dr. Murphey's PRT assessment that Plaintiff has no history of psychiatric treatment and no medically determinable mental impairment. (Admin. Tr. 62; Doc. 19-3, p. 7). The parties don't appear to dispute this. Dr. Murphey's opinion, however, does not provide any support for the ALJ's assessment of limitations related to Plaintiff's migraines.

### 2. Opinions by Doctors Monfared & Chung

The opinions by Doctors Monfared and Chung were the first opinions submitted in this case. Both were completed on check-the-box forms provided by the Social Security Administration.

On December 8, 2017, Dr. Ziba Monfared, M.D., a specialist in internal medicine, examined Plaintiff at the request of the Bureau of Disability Determination Services. (Admin. Tr. 885; Doc. 19-12, p. 112). Neither the Bureau of Disability Determination Services, nor Plaintiff, submitted any records to Dr. Monfared before the examination. (Admin. Tr. 886; Doc. 19-12, p. 113). In his report, Dr. Monfared listed "migraine headaches" as a diagnosis. (Admin. Tr. 888; Doc. 19-12, p, 115). Dr. Monfared then completed a check-box medical source statement. (Admin. Tr. 894-899; Doc. 19-12, pp. 121-126). That form requests information about Plaintiff's ability to lift, carry, sit, stand, walk, use her hands, use her feet, climb, balance, stoop, kneel crouch, and crawl. It also requests information about hearing or vision limitations, and environmental limitations. It does not include any specific inquiry about an individual's ability to pay attention or maintain regular attendance. Thus, Dr. Monfared's opinion does not address whether Plaintiff has a limitation in maintaining attendance or staying on task.

On December 29, 2019, state agency consultant Cahnkun Chung, M.D. completed an RFC assessment based on a review of the medical records available at the time. Like Dr. Monfared, Dr. Chung's opinion was written on a pre-printed check-box form. This form also does not include any specific inquiry about an individual's ability to pay attention or maintain regular attendance. Thus, Dr. Chung's opinion does not address whether Plaintiff has a limitation in maintaining

attendance or staying on task. Notwithstanding this shortfall in the questionnaire itself, Dr. Chung noted that Plaintiff suffered from "[c]hronic migraine headaches at least 3 times a month," consistent with the attendance limitation asserted by Plaintiff. (Admin. Tr. 65; Doc. 19-3, p. 10).

In his decision, the ALJ found:

> the opinions of Drs. Monfared and Chung are unpersuasive. Although they are somewhat supported by Dr. Monfared's examination and Dr. Chung's review of the record, they are ultimately inconsistent with the evidence as a whole. They are specifically inconsistent with the claimant's history of chronic pain, updated medical imaging, status post orthopedic surgeries, and on-going pain treatment.

(Admin. Tr. 22; Doc. 19-2, p. 23).

Plaintiff argues that these opinions were not relied on by the ALJ and do not contradict the off-task and attendance limitations that were improperly excluded from the RFC assessment. The Commissioner does not appear to dispute this. (Doc. 23, p. 23).

3.    Opinions by Doctors Garg and Andres, and CRNP Henfling

Dr. Garg, Plaintiff's treating neurologist, assessed that Plaintiff would be "off task" for more than 15% of each workday, would be absent either "multiple" or "three" days of work each month, and would be capable of working less than ten

hours per week. (Admin. Tr. 1156; Doc. 19-14, p. 128).[3] Ultimately, the ALJ found

that Dr. Garg's opinion was not persuasive because:

> He has not provided any objective medical findings to support his
> conclusions. His conclusions are also inconsistent with his treatment
> notes and the other clinical findings of record, which indicate that the
> claimant does not demonstrate signs of migraines or off task behavior
> during examinations. She is also able to perform regularly scheduled
> tasks such as attending appointments, paying bills, shopping for
> groceries, and buying Christmas and birthday presents for people
> (Exhibit 4E).

(Admin. Tr. 22; Doc. 19-2, p. 23).

Dr. Andres and CRNP Henfling assessed that Plaintiff would be "off task"

over 15% of the work week, and would miss more than three days of work per

month due to her impairments or treatment. (Admin. Tr. 1064-1065; Doc. 19-14,

pp. 34-35). The following explanation is offered in support of these limitations:

> In the 6 years I have been caring for this patient she has been
> medically excused from work at least 1-3 days out of every week. Her
> symptoms are unfortunately variable and intermittent. It is not
> possible to predict which days she is well enough to drive, sit/stand or
> walk in any capacity.

*Id.* These clinicians also assessed that Plaintiff would not be able to work any

hours on a regular basis due to "chronic" "intermittent" migraines. *Id.* The ALJ

---

[3] The copy of Dr. Garg's opinion provided to the Court is of poor quality. They
Court cannot discern how many days per week Dr. Garg estimated Plaintiff would
be absent. The ALJ characterized the opinion as missing "multiple" days each
month. (Admin. Tr. 22; Doc. 19-2, p. 23). Plaintiff argues Dr. Garg assessed that
Plaintiff would be absent three days per month. (Doc. 20, p. 11).

found that the assessment of the migraine-related limitations was not persuasive because the limitations are "inconsistent with the claimant's . . . lack of off task behavior during most appointments, ability to attend regularly scheduled appointments, and ability to perform activities of daily living, such as driving herself places." (Admin. Tr. 22; Doc. 19-2, p. 23).

Plaintiff argues that:

The limitations found by the ALJ as a result of the plaintiff's migraine headache impairment are woefully inadequate and simply do not reflect the nature of her migraine headaches. The ALJ's RFC determination and the hypothetical question posed to the vocational expert are bereft of any limitations concerning missed days from work or time that would be off task due to migraine headaches. By their very nature, migraine headaches can cause an individual to be unable to function when they are severe. The plaintiff testified that her migraine headaches are debilitating and that she takes 3 medications and has 2 additional backup medications which make her sleep and have side effects the following day. (R. 30). The plaintiff further testified that the symptoms of her migraine headaches involve pounding, light sensitivity and throwing up. (R. 47). Dr. Garg, the treating neurologist, explained that the plaintiff suffers from headaches and head pain characterized by severe frontal throbbing pain 4 to 6 times per week, that she would be off task over 15% of the workday and that she would miss work more than 3 times per month. (R. 1155-1157). NP Henfling and Dr. Andres indicated that the plaintiff's headaches cause nausea, dizziness, severe photophobia and sonophobia and that she would be off task over 15% of the time and would miss work more than 3 times per month. (R. 1067). Thus, there is clear and undisputed evidence in this record that the plaintiff suffers from severe migraine headaches which significantly limit her ability to maintain regular attendance and create significant time off task. The hypothetical posed to the vocational expert contains no limitations whatsoever on the plaintiff's attendance or ability to stay

on task which is directly contrary to the plaintiff's testimony and the medical evidence on these issues.

We note that there is no contrary evidence in the record concerning the effects of the plaintiff's migraine headaches. Dr. Monfared performed a consultative examination and confirmed the existence of migraine headaches but did not set forth any statements concerning functional limitations aside from a noise limitation. (R. 894-899). The record contains a cursory medical opinion from Dr. Chung, who reviewed a portion of the records (none from Dr. Garg) but never examined the plaintiff. (R. 65). However, Dr. Chung never offered any discussion as to limitations caused by the plaintiff's migraine headache condition. (R. 65). Furthermore, the ALJ specifically found that "the opinions of Drs. Monfared and Chung are unpersuasive." (R. 22). Therefore, the ALJ obviously is not relying upon these medical opinions as a justification for failing to appropriately reflect limitations from the plaintiff's migraine headache condition in the hypothetical question.

(Doc. 20, pp. 11-12).

In response, the Commissioner argues:

Substantial evidence supports the ALJ's RFC assessment, and hypothetical to the VE. As the ALJ noted, Plaintiff had a history of migraine headaches for which she has taken preventative medication (Tr. 20, 204-05, 485-86, 494, 798, 1034, 1036, 1041, 1044). However, as the ALJ pointed out, treatment records showed that medication provided migraine relief (Tr. 20, 204-05, 798, 1034, 1036). Notes from physical examination reflected that Plaintiff exhibits no on-going signs of stress, fatigue, or neurological deficits since her alleged onset date (Tr. 20, 205, 1036, 1040, 1044). Moreover, as the ALJ noted, CT scans of Plaintiff's head showed no significant abnormalities (Tr. 20-1365).

In addition, the ALJ considered the medical opinion evidence including the findings of Dr. Garg, Nurse Henfling and Dr. Andres, consultative medical examiner Dr. Monfared, and state agency medical consultants, Drs. Chung and Murphy (Tr. 22, 61-62, 63-65,

894-99, 1064-69, 1155-57). As the ALJ correctly pointed out, Dr. Chung and Dr. Monfared concluded that Plaintiff could perform less than medium work, (Tr. 63-65, 894-99), while Nurse Henfling opined that Plaintiff required bedrest for her migraines, and Dr. Garg noted that Plaintiff would be "off task" for more than 15% of each workday; miss multiple days of work each month; and be incapable of performing fort hours of work activity each week (Tr. 1155-57). As discussed more fully below, the ALJ complied with the applicable regulatory framework to evaluate each opinion and include those limitations in the RFC that found substantial evidentiary support in the record.

(Doc. 23, pp. 15-16).

I find that the ALJ's evaluation of the medical opinions of Doctors Garg and Andres, and CRNP Henfling is not supported by substantial evidence. The only support cited by the ALJ in support of his rejection of these limitations, assessed by three different treating sources, is that Plaintiff did not have a migraine during any medical appointment, and the absence of any record suggesting that Plaintiff missed an appointment because of a migraine. In doing so, the ALJ does not discuss the significance that three sources agree that Plaintiff is more limited than the ALJ found, that a fourth source agrees that Plaintiff would have three migraines per month, and appears to misunderstand the full extent of the treatment provided for Plaintiff's migraines. Because the ALJ does not consider or discuss this countervailing evidence, I find that the ALJ's decision to exclude the "off task" and attendance limitations is not supported by substantial evidence.

## V.    CONCLUSION

Accordingly, I find that:

(1)    The final decision of the Commissioner will be VACATED.

(2)    This case will be REMANDED to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

(3)    Final judgment will be issued in favor of Ann Decker.

(4)    The clerk of court should close this case.


Date: November 22, 2021                    BY THE COURT

                                           *s/William I. Arbuckle*
                                           William I. Arbuckle
                                           U.S. Magistrate Judge